UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| CHUCK ZEBROWSKI<br>2001 12th Street, NW, #305<br>Washington, DC 20009,<br>on behalf of himself and all others similarly<br>situated,<br><br>             Plaintiff,<br><br>   vs.<br><br>ROHM & HAAS COMPANY<br>100 Independence Mall West<br>Philadelphia, Pennsylvania, 19106;<br><br>ARKEMA, INC. (f/k/a ATOFINA<br>CHEMICALS, INC., f/k/a ELF ATOCHEM<br>NORTH AMERICA, INC.)<br>2000 Market Street<br>Philadelphia, Pennsylvania, 19103-3231;<br><br>FERRO CORPORATION<br>1000 Lakeside Avenue<br>Cleveland, Ohio 44114-1117;<br><br>AKCROS CHEMICALS AMERICA<br>500 Jersey Avenue<br>P.O. Box 638<br>New Brunswick, New Jersey 08901;<br><br>and<br><br>AKZO NOBEL, INC.<br>525 W. Van Buren Street<br>Suite 1600<br>Chicago, Illinois 60607-3823,<br><br>             Defendants. | Judge<br><br>No.<br><br>**INDIRECT-PURCHASER, CLASS-<br>ACTION COMPLAINT**<br><br>**(Jury Trial Demand)** |

Plaintiff, Chuck Zebrowski, files this Complaint on behalf of himself and all others similarly situated who purchased Plastic Additives, such as heat stabilizers, impact modifiers, and processing aids used to manufacture or process plastics, indirectly from Defendants, their predecessors, or their controlled subsidiaries and affiliates from January 1, 1990 to January 31, 2003 (the "Class Period"), and for their complaint allege as follows:

## NATURE OF THE CASE

1. Plaintiff's class-action lawsuit arises from Defendants' participation in a conspiracy to restrain the trade for and sale of Plastic Additives, such as heat stabilizers, impact modifiers, and processing aids used to manufacture or process plastics. Plaintiff's Complaint alleges that he indirectly purchased Plastic Additives from Defendants, whose conspiracy violated their respective states' antitrust statutes, in particular, D.C. Code. § 28-4501, *et seq*. Plaintiff also states a common-law claim for unjust enrichment under District of Columbia's unjust-enrichment law.

2. Defendants produce, manufacture, distribute, and sell Plastic Additives to customers throughout the U.S., including in the District of Columbia. During the Class Period, Defendants and their co-conspirators agreed, combined, and conspired with each other to fix, maintain, or stabilize prices and to allocate markets for the sale of Plastic Additives. As a result, Plaintiff and the class members paid higher Plastic Additives prices than they would have paid in a competitive market and have been damaged as a result.

## PARTIES

3. Plaintiff, Chuck Zebrowski, is a District of Columbia resident who indirectly purchased Defendants' Plastic Additives during the Class Period.

4. Defendant Rohm & Haas Company is a Delaware corporation with its principal place of business at 100 Independence Mall West, Philadelphia, Pennsylvania 19106. Rohm & Haas manufactured, marketed, and sold Plastics Additives in the U.S. during the Class Period, including in the District of Columbia. At certain times during the Class Period, Rohm & Haas engaged in a joint venture with Kureha Chemical Industry Co. Ltd. to manufacture, market, and sell Plastics Additives in the U.S. The Rohm & Haas-Kureha joint venture was conducted in part in Philadelphia, Pennsylvania.

5. Defendant Arkema, Inc. (f/k/a Atofina Chemicals, Inc., f/k/a Elf Atochem North America, Inc.) is a corporation with its principal place of business at 2000 Market Street, Philadelphia, Pennsylvania 19103-3231. Arkema manufactured, marketed, and sold Plastics Additives in the U.S. during the Class Period, including in the District of Columbia. Arkema is or at one time was a subsidiary or controlled affiliate of Atofina S.A. and TotalFinaElf S.A. At certain times during the Class Period, Arkema engaged in a Plastics Additives joint venture named Metco North America, Inc. with Mitsubishi Rayon Ltd., Mitsubishi Rayon America, Inc., and its subsidiaries or affiliates Metco was merged into Atofina in 2002, which became Arkema in 2004.

6. Defendant Ferro Corporation is an Ohio corporation with its principal place of business at 1000 Lakeside Avenue, Cleveland, Ohio 44114-1117. Ferro manufactured, marketed, and sold Plastic Additives in the U.S. during the Class Period, including in the District of Columbia.

7. Defendant Akcros Chemicals America is a company with its principal place of business at 500 Jersey Avenue, P.O. Box 638, New Brunswick, New Jersey 08901. Akcros

Chemicals manufactured, marketed, and sold Plastic Additives in the U.S. during the Class Period, including in the District of Columbia.

8. Defendant Akzo Nobel, Inc. is a corporation with its principal place of business at 525 W. Van Buren Street, Suite 1600, Chicago, IL 60607-3823. Akzo manufactured, marketed, and sold Plastic Additives in the U.S. during the Class Period, including in the District of Columbia.

9. Whenever this Complaint references corporate acts, deeds, or transactions, it means the corporations or entities committed the acts, deeds, or transactions by or through their officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of their business or affairs.

10. Various individuals, partnerships, and corporations not named participated as co-conspirators in the violations of law alleged in this Complaint and performed acts to further it. All co-conspirators' identities are unknown and will require discovery.

## JURISDICTION AND VENUE

11. This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amends 28 U.S.C. §1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiff is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. §1332(d)(2) and (6). This Court also has jurisdiction under 28 U.S.C. §1332(d) because "one or more members of the class is a citizen of a state within the United States and one or more of the Defendants is a citizen or subject of a foreign state." The Court also has personal jurisdiction over the parties because Plaintiff submit to the jurisdiction of the Court and

Defendants systematically and continually conduct business here and throughout the U.S., including marketing, advertising, and sales directed to residents in the District of Columbia.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c) because Defendants as corporations are "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction."

13. This action is related to *D.R. Ward Constr. Co. v. Rohm & Haas, Co.*, MDL 1684, Case No. 2:05-cv-4157-LDD, pending in the in the Eastern District of Pennsylvania, at Philadelphia, before the Honorable Legrome D. Davis.

## FACTUAL ALLEGATIONS

14. Plastics are made from resins and additives. Plastics Additives are added to plastic resins in order to enhance the quality of those resins. Commercial resins require the use of Plastics Additives to adjust performance characteristics to desired specifications and applications. Principal Plastics Additives are heat stabilizers, impact modifiers, and processing aids.

15. Heat stabilizers are used to protect resins from thermal degradation and to enhance the flexibility and stability of the end product. Although heat stabilizers are used in a number of plastics, polyvinyl chloride accounts for the great majority of their use.

16. Impact modifiers are used to improve the resistance of the finished plastics products to stress. Impact modifiers improve the strength of the product. Impact modifiers also increase resistance to weathering and stress rupture, and increase chemical resistance and tensile strength of plastic compounds.

17. Processing aids are used to reduce or increase melt viscosity, increase frictional heat and reduce uneven die flow.

18. The world market for all Plastics Additives is estimated at about $16.4 billion in 2000. Sales of all Plastics Additives in the U.S. were $4.6 billion in 2000 and are expected to increase at an average annual growth rate of 4% to $5.5 billion in 2005.

19. Beginning as early as January 1, 1990, and continuing until January 31, 2003, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for heat stabilizers and/or impact modifiers, and/or processing aids.

20. In formulating and effectuating the aforesaid contract, combination, or conspiracy, Defendants and their co-conspirators combined and conspired to do the following:

   a. Agreeing to charge prices at certain levels, allocate markets, and otherwise to fix, increase, maintain, or stabilize prices of heat stabilizers, impact modifiers, and processing aids sold in the U.S., including in the District of Columbia; and

   b. Selling heat stabilizers, impact modifiers, and processing aids at the agreed-upon prices.

21. The activities described above have been engaged in by Defendants and their co-conspirators for the purpose of effectuating the unlawful arrangements to fix, maintain, raise, or stabilize prices of heat stabilizers and/or impact modifiers and/or processing aids.

22. In July 2004, Crompton Corp. revealed that it had agreed to cooperate with U.S., Canadian, and European antitrust authorities in their joint investigation into collusive behavior in the worldwide Plastic Additives market. In exchange for Crompton's cooperation, these antitrust authorities granted Crompton conditional amnesty from prosecution relating to fixing Plastic Additives prices as well as other products that these agencies were investigating Crompton, such as EPDM, nitrile rubber, and urethanes. With respect to these agencies' investigations into

Rubber Chemicals price fixing, Crompton agreed to pay a total fine of $57 million to U.S. and Canadian antitrust regulators.

## FRAUDULENT CONCEALMENT

23. Plaintiff had no knowledge of Defendants' unlawful, self-concealing conspiracy and could not have discovered it at an earlier date by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by Defendants to avoid detection of, and to fraudulently conceal, their contract, combination, or conspiracy.

24. Plaintiff and the class members didn't discover and couldn't have discovered through the exercise of reasonable diligence the existence of the claims sued upon until shortly before commencing this civil action.

25. Because the contract, combination, or conspiracy was kept secret by Defendants, Plaintiff were unaware of the fact that Plastic Additives prices were secretly agreed-upon as alleged.

26. Defendants actively concealed these facts by affirmatively leading those who purchased directly from them—Plaintiff and the class members—to believe that Defendants' conduct and the prices charged were competitive.

27. Because of the conspiracy's fraudulent concealment, Plaintiff asserts that the applicable statutes of limitations have been tolled with respect to his antitrust and unjust-enrichment claims.

## CLASS-ACTION ALLEGATIONS

28. All Plaintiff bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class members:

> All persons and business entities in the District of Columbia that indirectly purchased products containing Plastic Additives manufactured, sold, or distributed by Defendants, other than for resale, from January 1, 1990 to and including January 31, 2003.
>
> Excluded from All-Plaintiff's Class are Defendants; entities in which Defendants have a controlling interest; Defendants' employees, officers, or directors; Defendants' legal representatives, successors, or assigns; judicial officers who may hear the case or related persons; and jurors or related persons.

29. Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

30. Plaintiff does not know the exact size of the class, since this information is in Defendants' exclusive control. But based on the nature of the trade and commerce involved, Plaintiff believes that the class numbers in the millions and that the class members are geographically dispersed throughout the District of Columbia. Therefore, joinder of all class members would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

31. Plaintiff's claims are typical of other class members' claims because Plaintiff was injured through the uniform misrepresentations and omissions described and paid supra-competitive prices for products containing Plastic Additives without having been informed that they were paying illegal and improper prices. Accordingly, by proving his own claims, Plaintiff will presumptively prove the class members' claims.

32. Common legal and factual questions among and within the class exist, such as:

   a. Whether Defendants conspired to fix, raise, maintain, or stabilize the prices of Plastic Additives marketed, distributed, and sold in the District of Columbia;

   b. Whether Defendants conspired to manipulate and allocate the market for Plastic Additives marketed, distributed, and sold in the District of

        Columbia;

   c.    The existence and duration of Defendants' horizontal agreements to fix, raise, maintain, or stabilize the prices of Plastic Additives marketed, distributed, and sold in the District of Columbia;

   d.    The existence and duration of Defendants' horizontal agreements to manipulate and allocate the market for Plastic Additives marketed, distributed, and sold in the District of Columbia;

   e.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to fix, raise, maintain, or stabilize the prices of Plastic Additives marketed, distributed, and sold in the District of Columbia;

   f.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to allocate the market for Plastic Additives marketed, distributed, and sold in the District of Columbia;

   g.    Whether Defendants' conspiracy was implemented;

   h.    Whether Defendants took steps to conceal their conspiracy from Plaintiff and the class members;

   i.    Whether Defendants' conduct caused injury in fact to the business or property of Plaintiff and the class members, and if so, the appropriate classwide measure of damages;

   j.    Whether the agents, officers or employees of Defendants and their co-conspirators participated in telephone calls, meetings, and other communications in furtherance of their conspiracy; and

   k.    Whether the purpose and effect of the acts and omissions alleged was to fix, raise, maintain, or stabilize the prices of Plastic Additives marketed, distributed, and sold in the District of Columbia, and to manipulate and allocate the market for Plastic Additives marketed, distributed, and sold in the District of Columbia.

33.    Plaintiff can and will fairly and adequately represent and protect the class members' interests and has no interests that conflict with or are antagonistic to these class members' interests. Plaintiff's attorneys are experienced and competent in complex class-action and consumer-antitrust litigation.

34. Class certification is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

   a. Common questions of law and fact overwhelmingly predominate over any individual questions that may arise within the class and, consequently, enormous economies to the court and parties exist in litigating the common issues on a classwide basis instead of on a repetitive individual basis;

   b. Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

   c. Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by class members; and

   d. Despite the relatively small size of each individual class member's claim, the aggregate volume of their claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the class.

35. Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual class members, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede their ability to protect their interests. Separate actions prosecuted by individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

36. Class certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective class' members.

37. Plaintiff's claims are typical of the associated class members' claims because Defendants injured Plaintiff and the respective class members in the same manner (*i.e.,* Plaintiff and the class members were forced to pay supra-competitive prices for products containing Plastic Additives).

## COUNT I
### VIOLATION OF D.C. CODE § 28-4501 *et seq.*

38. Plaintiff repeat and re-allege paragraphs 1 through 37.

39. From January 1, 1990 through January 31, 2003, Defendants engaged in a flagrant contract, combination, or conspiracy in restraint of trade or commerce within the District of Columbia. In particular, Defendants conspired to fix Plastic Additives prices and allocate Plastic Additives customers and markets. Defendants' conspiracy lessened full and free competition in Plastic Additives importation and sale into District of Columbia and controlled its costs, which violated D.C. Code § 28-4501 *et seq.*

40. Defendants' conspiracy caused them to (a) fix, raise, maintain, and stabilize Plastic Additives prices; (b) allocate Plastic Additives customers and markets; and (c) caused Plaintiff and the other Class members to pay higher prices for Plastic Additives that they indirectly purchased from Defendants.

41. In formulating and effectuating their conspiracy, Defendants and their co-conspirators:

    a.    Met to discuss Plastic Additives customers and markets;

    b.    Agreed to charge prices at certain levels and to increase or maintain prices for Plastic Additives sold in the District of Columbia;

    c.    Issued price announcements, quotations, and charged prices consistent with their illegal agreement; and

    d.    Allocated Plastic Additives markets and customers consistent with their illegal agreement.

42.    Defendants' conspiracy had the following effects:

    a.    Plastic Additives price competition was restrained, suppressed, and eliminated throughout the U.S., including in the District of Columbia;

    b.    Plastic Additives prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the U.S., including in the District of Columbia;

    c.    Plaintiff and the other Class members that indirectly purchased Plastic Additives were deprived of free and open market competition and were injured; and

    d.    Plaintiff and the other Class members paid more than they otherwise would have for Plastic Additives that they purchased indirectly.

43.    Defendants' conspiracy substantially affected trade or commerce within the District of Columbia.

44.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the other class members were injured by having paid more products containing Plastic Additives than they otherwise would have absent Defendants' conspiracy.

## COUNT II
### UNJUST ENRICHMENT

45.    Plaintiff repeat and re-allege paragraphs 1 through 44.

46.    As the result of Defendants' illegal agreement, contract, combination, and conspiracy, Plaintiff and the class members conferred a benefit upon Defendants, and Defendants

received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendants to retain this benefit without paying its reasonable value to Plaintiff and the class members.

47.  As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the class members suffered injury and seek an order directing Defendants to return to them the amount each of them improperly paid to Defendants, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that this Court enter judgment in his and the class members' favor and against Defendants, as follows:

A.  That this Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify Plaintiff's proposed class;

B.  That this Court rule that Defendants' conspiracy violated District of Columbia's antitrust law and that compensatory damages, including treble damages, are appropriate;

C.  That this Court determine that Defendants were unjustly enriched;

D.  That this Court permanently enjoin Defendants from conspiring to fix Plastic Additives prices and allocating Plastic Additives markets or other injunctive relief as this Court deems appropriate;

E.  That this Court award Plaintiff post-judgment interest, their costs, and reasonable attorneys' fees; and

F.  That this Court order any other relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all triable issues.

Dated: June 23, 2008

Respectfully submitted,

*[signature]*

Donna F. Solen (Bar #465098)
**THE MASON LAW FIRM, LLP**
1225 19th Street N.W., Suite 500
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: dsolen@masonlawdc.com

Daniel R. Karon
**GOLDMAN SCARLATO & KARON, P.C.**
55 Public Square, Suite 1500
Cleveland, OH 44114
Telephone: (216) 622-1851
Facsimile: (216) 622-1852
Email: karon@gsk-law.com

Isaac Diel
**SHARP MCQUEEN, PA**
Financial Plaza
6900 College Boulevard, Suite 285
Overland Park, KS 66211
Telephone: (913) 661-9931
Facsimile: (913) 661-9935
Email: dslawkc@aol.com

Krishna B. Narine
**THE LAW OFFICE OF KRISHNA B. NARINE, PC**
2600 Philmont Avenue, Suite 324
Huntingdon Valley, PA 19006
Telephone: (215) 914-2460
Facsimile: (215) 914-2462
Email: knarine@kbnlaw.com

*Attorneys for Plaintiff and the proposed class*

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
Chuck Zebrowski
2001 12th Street, NW, #305
Washington, DC 20009

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __11001__
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
Rohm & Haas Co., Arkema, Inc., Ferro Corp., Akcros Chemicals America, Akzo Nobel, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __88888__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Donna F Solen
The Mason Law Firm, LLP
1225 19th Street, NW, Suite 500
Washington, DC 20036

Case: 1:08-cv-01080
Assigned To : Robertson, James
Assign. Date : 6/23/2008
Description: Antitrust

**JURY ACTION**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ⊙ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ⊙ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ⊙ A. Antitrust
- [X] 410 Antitrust

### ○ B. Personal Injury/Malpractice
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- [ ] 151 Medicare Act

Social Security:
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

V. ORIGIN
- ◉ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Restraint of Trade, Conspiracy, Unjust Enrichment

VII. REQUESTED IN COMPLAINT  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 [X]  DEMAND $ _____  Check YES only if demanded in complaint  JURY DEMAND: YES [X]  NO ☐

VIII. RELATED CASE(S) IF ANY  (See instruction)  YES [X]  NO ☐  If yes, please complete related case form.

DATE  June 23, 2008    SIGNATURE OF ATTORNEY OF RECORD 

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.